The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of August 6, 1992 plaintiff had been employed approximately six years by defendant, a company which manufactured sofa frames, chairs and arms. His job was drum sander operator which involved feeding chair arms through a machine which cut them down and sanded them. He sustained a compensable injury on that date when he fell as he was walking down the steps leaving work and injured his left foot and leg. After a short period of treatment by Dr. Record, he was referred to Dr. O'Keeffe, an orthopaedic surgeon, who assumed his care.
2. Dr. O'Keeffe diagnosed plaintiff's condition as a partial tear of the hip flexor muscle and a possible avulsion fracture of the navicular bone in his left foot. It was unclear from the x-rays whether the fracture preexisted his injury. In any event, his foot symptoms resolved. However, he continued to complain of hip and leg pain. Dr. O'Keeffe treated him with rest, medication and physical therapy and ordered an MRI to rule out avascular necrosis of the hip joint.
3. In November 1992 plaintiff saw Dr. Marlowe for a second opinion regarding his condition. Dr. Marlowe's impression was that he had a mild strain of the left hip and that he should return to work at light duty. When Dr. O'Keeffe saw him on December 9, he was released to return to work at light duty. He returned to work on December 14 and began to have increased symptoms after working two ten-hour days, so he returned to Dr. O'Keeffe on December 16. Dr. O'Keeffe instructed him to remain out of work the remainder of that week and to return to work the next week at five hours per day.
4. Plaintiff subsequently returned to work as a jitterbug sander. He was provided a stool to sit on and other employees were instructed to take his work to him. His allegation that he had to regularly go get his work and therefore bend, stoop and lift repetitively is not accepted as credible. However, he reported to Dr. O'Keeffe that his employer was violating his restrictions and he continued to complain of pain. Dr. O'Keeffe ordered an MRI of his lumbosacral spine in February 1993 and sent him for a functional capacity evaluation the next month. The evaluation indicated that he could perform work in a light capacity. The job his employer had provided was within his capacity.
5. Plaintiff continued working for defendant until April 23, 1993. During the week prior to that date, he became verbally abusive to a co-worker and at one point grabbed her by the neck and jerked her. She reported the problems to their supervisor who confronted plaintiff. Plaintiff was belligerent with him so the supervisor informed Mr. Rice who decided, in view of his history of disruptive behavior and insubordination, that he should be fired. He was therefore terminated on April 23, 1993.
6. Defendant, who had admitted liability for benefits under the Workers' Compensation Act for this injury, continued to pay compensation to plaintiff for temporary partial disability after his termination. After seeing Dr. O'Keeffe on June 2, 1993, plaintiff moved to Franklin. He continued to receive medical treatment at defendant's expense and underwent a rehabilitation program at Asheville Rehabilitation. His condition was diagnosed there as: 1-status post left hip strain, 2-left sacroiliac irritation, 3-left lateral flexor tendonitis and 4-chronic pain syndrome. At the initial physical therapy evaluation he gave less than maximum effort and demonstrated inconsistencies in his examination. These problems persisted during the course of the program and on August 20 when he was discharged Dr. Johnson stated that he had demonstrated signs of symptom magnification.
7. Dr. O'Keeffe examined plaintiff again on August 25, 1993 and determined that he had reached maximum medical improvement. He was given permanent work restrictions at that time.
8. From April 23 through August 25, 1993, plaintiff was capable of performing the light work duties which had been provided by defendant. By his misconduct towards co-workers and management, he constructively refused suitable work which had been offered by his employer. His refusal was not justified.
9. Plaintiff reached maximum medical improvement as of August 25, 1993. His condition as of that date was difficult to assess because he was exaggerating his symptoms. The functional capacity evaluation performed that month did not accurately indicate his limitations.
10. For six months following this injury, plaintiff was diagnosed with and treated for problems with his left hip, leg and foot. There is no medical evidence establishing a causal relationship between his injury on August 6, 1992 and any back condition for which he was treated the following year, and defendant did not admit liability for a back condition on the Form 21 agreement. Consequently, the back condition is not found to be a proximate result of the injury giving rise to this claim.
11. As of August 25, 1993 plaintiff was able to perform at least light duty work on a full-time basis. There is no evidence that he made any effort to find employment at that time. In view of his misconduct at work with defendant, the fact that he was exaggerating his symptoms and impairment, and his general bad attitude, he did not establish that his failure to work after that date was due to his injury. His actual earning capacity cannot be determined. It would not have been futile for him to look for work insofar as his injury was concerned, although his attitude and behavior would certainly have been negative factors for any potential employer.
12. Dr. O'Keeffe rated plaintiff with a 5% permanent partial disability to the hip but did not indicated what impairment he sustained to the leg as a whole. Consequently, his permanent partial disability cannot be determined at this time.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff was entitled for compensation for temporary partial disability at the rate of two-thirds of the difference between his former average weekly wage and his actual earnings during the week of December 14, 1992 and not based upon what he would have earned had he continued working the entire week. However, defendants have overpaid compensation for temporary partial disability and are entitled to a credit. G.S. § 97-30; G.S. § 97-42.
2. Plaintiff constructively refused suitable light work offered by his employer as of April 23, 1993 without justification, and he is not entitled to temporary total disability compensation after that date. G.S. § 97-32.
3. Temporary total disability ends when a claimant reaches maximum medical improvement. Moretz v. Richards and Associates,Inc., 316 N.C. 539 (1986).
4. Plaintiff did not prove ongoing disability after August 25, 1993 when he reached maximum medical improvement in that he did not show reasonable efforts to find other employment or that it would have been futile for him to have looked for another job.Russell v. Lowe's Products Distribution, 108 N.C. App. 762 (1993);Anderson v. Northwestern Motor Company, 233 N.C. 372 (1951).
5. Plaintiff is entitled to compensation for permanent partial disability to his leg, however the amount cannot be determined with the evidence of record. G.S. § 97-31.
6. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. G.S. § 97-2 (19); G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Although plaintiff is entitled to additional compensation for temporary partial disability for the week of December 14, 1992, defendant is entitled to a credit for their overpayment of compensation for temporary partial disability.
2. Plaintiff's claim for additional compensation for wage loss after August 25, 1993 is DENIED.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
 S/ _________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ J. RANDOLPH WARD COMMISSIONER
CMV/CNP/tmd 4/12/95